UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALFONSO AMOS, Jr.,

                Plaintiff,

v.                                   1:18-CV-1367
                                   (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                       OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC   ANTHONY ROONEY, ESQ.
  Counsel for Plaintiff                 KENNETH HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.         TIMOTHY RAZEL, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       The parties consented, in accordance with a Standing Order, to proceed before

the undersigned.  (Dkt. No. 21.)  The court has jurisdiction over this matter pursuant

to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-

motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied and the

Commissioner's motion is granted.

## I.     RELEVANT BACKGROUND

## A.      Factual Background

Plaintiff was born in 1964.  (T. 91.)  He completed the 10th grade.  (T. 182.)

Generally, Plaintiff's alleged disability consists chronic seizures, back pain, "voices in

head," and learning disability.  (T. 89.)  His alleged disability onset date is April 30,

2013.  (T. 168.)  His past relevant work consists of kitchen porter.  (T. 18.)

## B.      Procedural History

On March 5, 2015, Plaintiff applied for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act.  (T. 91, 162, 177.)[1]  Plaintiff's application was

initially denied, after which he timely requested a hearing before an Administrative Law

Judge ("the ALJ").  On June 19, 2017, Plaintiff appeared before the ALJ, Stephen

Cordovani.  (T. 34-85.)  On October 25, 2017, ALJ Cordovani issued a written decision

finding Plaintiff not disabled under the Social Security Act.  (T. 7-24.)  On October 2,

2018, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final

decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial

review in this Court.

## C.      The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and

conclusions of law.  (T. 12-20.)  First, the ALJ found Plaintiff had not engaged in

substantial gainful activity since June 20, 2014.  (T. 12.)  Second, the ALJ found Plaintiff

had the severe impairments of: a seizure disorder; degenerative disc disease involving

the lower back; a left hip impairment; and borderline intellectual functioning.  (*Id*.)  Third,

---

[1]        Elsewhere in the record Plaintiff's application date is listed as June 15, 2015 and June 20, 2014.
See Index.  Plaintiff's counsel listed his application date as June 20, 2014 (T. 31) and the ALJ's written decision lists
his application date as June 20, 2014 (T. 10, 12).  The June dates appear to be typos.

the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 13.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except:

> the work may occasionally involve climbing or ramps or stairs; kneeling, crouching, and crawling. However, the work may not involve exposure to unprotected heights or moving mechanical parts; operation of heavy machinery or equipment; driving; nor climbing of ladders ropes or scaffolds. [Plaintiff] can understand, remember and carry out simple instructions and tasks but must avoid supervisory duties, independent decision-making and strict production quotas. The work may only involve up to minimal changes in work routine and processes; frequent interaction with a supervisor, and up to occasional interaction with co-workers and the general public.

(T. 15.)[2] Fifth, the ALJ determined Plaintiff was unable to perform his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 18-20.)

## II.  THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.  Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in determining Plaintiff's physical RFC without a medical opinion regarding Plaintiff's lumbar impairments and avascular necrosis of the hip. (Dkt. No. 12 at 8-13.) Second, and lastly, Plaintiff argues the ALJ

---

[2]  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

erred in evaluating Plaintiff's social limitations. (*Id*. at 13-16.) Plaintiff also filed a reply in which he reiterated his original arguments. (Dkt. No. 19.)

### B.    Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ was legally permitted to formulate the physical RFC without a supportive medical opinion. (Dkt. No. 18 at 6-8.) Second, Defendant argues substantial evidence supported the ALJ's physical RFC finding. (*Id*. at 8-13.) Third, and lastly, Defendant argues the ALJ properly limited Plaintiff to frequent interaction with supervisors in determining Plaintiff's mental RFC. (*Id*. at 13-18.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 416.920.  The Supreme Court has recognized the validity of this sequential evaluation

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The

five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a 'residual
> functional capacity' assessment, whether the claimant can perform any of
> his or her past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the claimant
> can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.  ANALYSIS

The RFC is an assessment of "the most [Plaintiff] can still do despite [his]

limitations."  20 C.F.R. § 416.945(a)(1)[3].  The ALJ is responsible for assessing Plaintiff's

RFC based on a review of relevant medical and non-medical evidence, including any

statement about what Plaintiff can still do, provided by any medical sources.  *Id*. §§

416.927(d), 416.945(a)(3), 416.946(c).  Although the ALJ has the responsibility to

determine the RFC based on all the evidence in the record, the burden is on Plaintiff to

demonstrate functional limitations that preclude any substantial gainful activity.  *Id*. §§

416.912(c), 416.927(e)(2), 416.945(a), 416.946(c).

### A.  Physical RFC Determination

Plaintiff's initial argument, that the ALJ's physical RFC determination was the

product of legal error because it was not supported by a medical opinion, is without

merit.  (Dkt. No. 8at 8-11.)  An ALJ's RFC determination is not fatally flawed merely

---

[3]        Effective March 27, 2017, many of the regulations cited herein have been amended, as
have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security application was
filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the
earlier regulations and SSRs.

because it was formulated absent a medical opinion. The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Here, there was sufficient evidence in the record for the ALJ to assess Plaintiff's RFC. The record contained numerous treatment records, consultative examinations, and hearing testimony.

Plaintiff also appears to argue a medical opinion analyzing MRI results was necessary because otherwise the ALJ impermissibly interpreted the imaging results. (Dkt. No. 12 at 11-12.) Plaintiff argues the consultative examiner did not review the MRI and therefore her opinion cannot constitute substantial evidence to support the ALJ's physical RFC determination. (*Id*. at 11.)

To be sure, consultative examiner, Donna Miller, D.O., did not review any evidence in the record. A consultative examiner is not required to obtain or review laboratory reports or treatment records. *Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) (the ALJ did not commit reversible error for relying on the opinion of a consultative examiner where the examiner did not review plaintiff's record, however he personally examined plaintiff and reached conclusions consistent with the objective medical evidence in the record); *see Genito v. Comm'r of Soc. Sec.,* No. 7:16-CV-0143,

2017 WL 1318002, at *9 (N.D.N.Y. Apr. 7, 2017) ("there is no legal requirement that opinion sources must have access to a full and complete record in order for their opinions to be sufficient to constitute substantial evidence"); *see* 20 C.F.R. § 404.1519n(c)(1)-(7) (elements of a complete consultative examination).

Here, for the reasons further outlined below, the ALJ properly reviewed the medical evidence in the record and formulated an RFC consistent with that evidence. Although no medical source provided a specific opinion regarding Plaintiff's functional limitations based on a review of the MRI, this does not mean the ALJ impermissibly interpreted the findings in the MRI. The ALJ acknowledged the findings of Plaintiff's MRI as outlined on the report; however, the ALJ did not rely on his own lay interpretation of the MRI to support his RFC determination. Physicians, who did have access to the MRI, consistently reported normal findings on examination and did not provide any functional limitations in their reports. In formulating Plaintiff's physical RFC, the ALJ relied on Dr. Miller's opinion, objective observations of medical sources, and Plaintiff's activities of daily living. Therefore, as outlined in greater detail below, the ALJ properly assessed Plaintiff's physical RFC based on the record as a whole.

The ALJ relied, in part, on the medical opinion evidence in the record to formulate the physical RFC; however, the ALJ ultimately determined Plaintiff had greater restrictions than opined by the consultative examiner. *See Lesanti v. Comm'r of Soc. Sec.*, No. 1:19-CV-00121, 2020 WL 500986, at *6 (W.D.N.Y. Jan. 30, 2020) (citing *Baker v. Berryhill*, No. 1:15-CV-00943, 2018 WL 1173782, at *4 (W.D.N.Y. Mar. 6, 2018) ("[R]emand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record.")).

Consultative examiner, Donna Miller, D.O., examined Plaintiff in 2015.  (T. 262-265.)  Although Dr. Miller did not review Plaintiff's MRI, or any other part of Plaintiff's record, she took a complete history, reviewed Plaintiff's medication, took Plaintiff's social history and activities of daily living.  (*Id*.)  Plaintiff reported seizures and low back pain.  (T. 262.)  Dr. Miller observed Plaintiff had a normal gait, could walk on heels and toes, could squat, used no assistive devices, needed no help changing for exam or getting on and off the exam table, and was able to rise from a chair without difficulty.  (T. 263.)  On exam Plaintiff had full range of motion in his cervical and lumbar spine; full range of motion in his upper and lower extremities, his joints were stable and nontender; and he had no redness, heat, swelling, or effusion.  (T. 264.)  Dr. Miller opined Plaintiff "should refrain from operating heavy machinery or driving secondary to his seizure history."  (T. 264.)  The ALJ afforded these limitations "great weight."  (T. 18.)  However, the ALJ noted "the lack of additional limitations in the doctor's opinion" regarding Plaintiff's other exertional limitations, was given "little weight."  (*Id*.)

The ALJ relied on other evidence in the record to support limitations in addition to the specific limitations imposed by Dr. Miller.  Regarding Plaintiff's back and hip impairments, the ALJ acknowledged objective medical imagining such as a lumber spine MRI from 2016 showing multilevel disc disease.  (T. 16, 274.)  The ALJ also noted Plaintiff's reports of left hip pain due to avascular necrosis.  (T. 16, 291.)  The ALJ acknowledged objective medical findings on examination were normal with respect to Plaintiff's severe back and hip impairments.  (T. 17.)  Indeed, an objective examination revealed Plaintiff's back had normal range of motion, and the remainder of the examination of Plaintiff's musculoskeletal system also revealed normal range or motion,

normal strength, no tenderness, and no swelling.  (T. 243.)  On other examinations Plaintiff displayed a normal gait, "normal" upper and lower extremities, and/or "normal" back/spine.  (T. 278, 282, 286, 299, 305.)

The ALJ also properly assessed objective medical findings regarding Plaintiff's seizure disorder and ultimately determined Plaintiff's impairment was controlled with medication.  (T. 16, 18.)  Plaintiff did not consistently take his seizure medication due to lack of insurance and other factors until January 2016.  (T. 276.)  Plaintiff reported to his primary care physician he did not have seizures since starting medication.  (*Id*.)  At a follow up visit Plaintiff reported "no seizures for many months" with medication.  (T. 284.)  Therefore, the ALJ properly determined Plaintiff's seizure disorder was controlled with medication.

In formulating Plaintiff's RFC, the ALJ also properly considered Plaintiff's activities of daily living.  The ALJ noted Plaintiff was able to take public transportation. (T. 16.)  Plaintiff informed the consultative examiners he could cook, clean, go shopping, and do laundry.  (T. 260.)

Overall, substantial evidence supported the ALJ's physical RFC determination. The ALJ relied Dr. Miller's medical opinion; however, the ALJ concluded Plaintiff had additional exertional limitations based on his severe impairments.  The ALJ relied on objective medical evidence in the record that Plaintiff had full range of motion in his back, and upper and lower extremities.  The ALJ acknowledged treatment Plaintiff received for his impairments and noted on occasion Plaintiff refused treatment and failed to comply with medication.

It is ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). Plaintiff failed to meet that burden.

Overall, the ALJ did not impermissibly interpret raw medical data. In formulating the physical RFC, the ALJ considered the objective medical evidence, Plaintiff's treatment history, Plaintiff's subjective allegations, and the opinion of Dr. Miller. As such, the physical RFC assessment in this case was consistent with the record and was supported by substantial evidence.

### B. Mental RFC Determination

Plaintiff argues the ALJ erred in evaluating Plaintiff's social limitations. (Dkt. No. 12 at 13-16.) Specifically, Plaintiff argues the ALJ committed error in disregarding social limitations imposed by non-examining State agency medical consultant, H. Tzetzo, whose opinion the ALJ afforded significant weight. (*Id*.)

On June 5, 2016, non-examining State agency medical consultant, H. Tzetzo, review the file and provided a medical source statement. (T. 89-94.) Dr. Tzetzo opined Plaintiff had "moderate" limitations in social interactions. (T. 97.) Dr. Tzetzo opined Plaintiff's "ability to deal with coworkers and the public would be somewhat reduced, but adequate, to handle brief and superficial contact." (T. 94.) The ALJ afforded Dr. Tzetzo's opinion "significant weight." (T. 18.)

Plaintiff argues Dr. Tzetzo's opinion was inconsistent with the ALJ's RFC which limited Plaintiff to frequent interaction with a supervisor and occasional interaction with co-workers and the public; and further, the ALJ failed to provide sufficient explanation to support the RFC's social limitations. (Dkt. No. 12 at 15.) Contrary to Plaintiff's

assertion, the ALJ did not reject Dr. Tzetzo's social limitations and the ALJ's social limitations provided in the RFC were supported by the doctor's opinion as well as other substantial evidence in the record.

As stated by Defendant, Dr. Tzetzo opined Plaintiff, despite a "somewhat reduced" ability to interact with coworkers and the public, could nonetheless "handle brief and superficial contact" with them. (Dkt. No. 18 at 13; T. 94.) The ALJ found Dr. Tzetzo's opinion "reasonably consistent with the evidence." (T.19.) Indeed, evidence supported Dr. Tzetzo's statement that despite limitations in social functioning, Plaintiff was not wholly precluded from interacting with others. Consultative examiner, Susan Santarpia, Ph.D., examined Plaintiff and opined Plaintiff could adequately relate with others. (T. 260, 268.) The ALJ afforded Dr. Santarpia's opinions "great weight." (T. 17.) Elsewhere in his decision, the ALJ noted Plaintiff appeared "pleasantly and cooperatively" for treatment and maintained familial ties. (T. 14-15.) Indeed, as outlined by Defendant, the record indicated Plaintiff was able to interact with treating providers, consultative examiners, and the ALJ without difficulties. (Dkt. No. 18 at 17; T. 243, 299, 315, 376.) Therefore, the ALJ's social limitations were supported by the medical opinions of Drs. Santarpia and Tzetzo and objective observations in the record.

Overall, the ALJ properly assessed Plaintiff's RFC and the ALJ's determination was supported by substantial evidence in the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's unfavorable determination is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated:      March 27, 2020

_____
William B. Mitchell Carter
U.S. Magistrate Judge